ADULT VIDEO ASSOCIATION, Doe, Inc., Roe, Inc., Paul Poe, Plaintiffs–Appellants,

v.

William BARR,* Attorney General of the United States, Defendant–Appellee.

No. 90–55252.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 6, 1991.

Decided March 12, 1992.

As Amended June 18, 1992.

---

* Attorney General William Barr is substituted for Richard Thornburgh as defendant/appellee, pursuant to Fed.R.App.P. 43(c).

John H. Weston, G. Randall Garrou, Clyde F. DeWitt and Cathy E. Crosson, Weston, Sarno, Garrou & DeWitt, Beverly Hills, Cal., for plaintiffs-appellants.

Stan Blumenfeld, Asst. U.S. Atty., Los Angeles, Cal., for defendant-appellee.

Before: TANG, REINHARDT and WIGGINS, Circuit Judges.

TANG, Circuit Judge:

Adult Video Association, Doe, Inc., Roe, Inc., and Paul Poe filed an action seeking a declaration that the federal Racketeer Influenced and Corrupt Organizations Act's ("RICO") criminal provisions are facially unconstitutional when enforced against obscenity offenses. The district court granted the government's motion to dismiss for failure to state a claim. The plaintiffs appeal only the district court's dismissal of their First Amendment challenge to RICO's criminal provisions. We affirm in part and remand in part.

## BACKGROUND

RICO, 18 U.S.C. §§ 1961–1968, imposes severe penalties on any person convicted of engaging in a pattern of racketeering activity. The penalties include prison terms of up to twenty years, substantial fines, and forfeiture of

(1) any interest the [defendant] has acquired or maintained in violation of [RICO];

(2) any—

(A) interest in;

(B) security of;

(C) claim against; or

(D) property or contractual right of any kind affording a source of influence over;

any enterprise which the [defendant] has established, operated, controlled, conducted, or participated in the conduct of in violation of [RICO]; and

(3) any property constituting, or derived from, any proceeds which the [defendant] obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of [RICO].

18 U.S.C. § 1963(a). Forfeiture is mandatory upon conviction. *Id.*

The statute also permits the government to apply to a district court for a pre-trial order to preserve assets for forfeiture. 18 U.S.C. § 1963(d). Courts may authorize pre-trial seizures of assets, issue restraining orders and injunctions, require the execution of performance bonds, and "take any other action to preserve the availability of property ... for forfeiture." 18 U.S.C. § 1963(d)(1).

A defendant is guilty of engaging in a pattern of racketeering activity if that person commits two or more acts of "racketeering activity." 18 U.S.C. § 1961(5). The statute includes a laundry list of racketeering activities, any one of which may serve as a predicate offense in a pattern of racketeering. 18 U.S.C. § 1961(1). In 1984, Congress added to the list of predicate offenses "any act ... dealing in obscene matter ... which is chargeable under State law and punishable by imprisonment for more than one year" and "any act which is indictable under" the federal obscenity laws, 18 U.S.C. §§ 1461–1465. 18 U.S.C. § 1961(1); *see also* Pub.L. No. 98–473, 98 Stat. 1837 (1984).

The appellants, Adult Video Association, Doe, Inc., Roe, Inc., and Paul Poe (collectively, "Adult Video") are a producer, distributor, retailer, and consumer of sexually explicit videotapes, respectively. They brought an action against the Attorney General of the United States challenging RICO's provisions as facially unconstitutional under the First, Fifth, and Eighth amendments to the federal Constitution.[1]

---

**1.** Adult Video presses only the First Amendment claim in this appeal. The original action also attacked RICO's civil remedies, 18 U.S.C. § 1964, as unconstitutional. Adult Video does

Adult Video's complaint asserts that RICO's authorization of pre-trial seizures and its comprehensive post-trial forfeiture provisions amount to unconstitutional prior restraints on speech. Adult Video also argues that the severe penalties RICO authorizes for as few as two obscenity violations, when combined with the inherent uncertainty of deciding what qualifies as obscenity, chills constitutionally protected erotic and sexually explicit speech. In support of its position, Adult Video cites the decision of Roe, Inc. not to rent or sell any sexually explicit videotapes and Roe, Inc.'s inability to obtain any non-explicit, erotic videotapes due to distributors' liability concerns. Adult Video also points to Paul Poe's asserted inability to rent or to buy sexually explicit videos for home viewing, because video stores fear that they will become the object of a racketeering prosecution.

The government moved under Fed. R.Civ.P. 12(b)(6) to dismiss Adult Video's action for failure to state a claim. In August 1989, the district court granted the motion with respect to every claim except the count challenging RICO's civil remedies. The court rejected Adult Video's argument that a First Amendment chill emanates from a combination of (i) the inherent ambiguities in the definition of obscenity, (ii) the lax scienter requirement for obscenity, and (iii) the severe punishments RICO authorizes.[2] The court characterized Adult Video's argument as little more than "an artful attempt to bypass" the Supreme Court's definition of obscenity in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).

With respect to Adult Video's prior restraint argument, the district court held that RICO imposed "subsequent punishment," rather than a prior restraint, on defendants duly convicted of obscenity violations. Relying on *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 106 S.Ct. 3172, 92 L.Ed.2d 568 (1986), the district court concluded that such subsequent punishment did not run afoul of the First Amendment.

Finally, the district court rejected the argument that section 1963(d)'s authorization of pre-trial seizures made the provision facially unconstitutional. The court acknowledged that the Supreme Court's opinion in *Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 109 S.Ct. 916, 103 L.Ed.2d 34 (1989), effectively foreclosed pre-trial seizures of allegedly obscene materials under RICO. The district court nonetheless found facial invalidation inappropriate because section 1963(d) authorizes a variety of other pre-trial measures the facial constitutionality of which Adult Video does not question.

In January 1990, Adult Video filed a motion for voluntary dismissal of its only remaining claim (the constitutionality of RICO's civil remedies). The district court granted the motion and entered a final judgment on January 25, 1990.

Adult Video subsequently filed a timely notice of appeal to this court.

## DISCUSSION

### I. *Standard of Review*

We review the district court's dismissal of the complaint for failure to state a claim de novo. *Hartford Accident & Indem. Co. v. Continental Nat'l Am. Ins. Cos.*, 861 F.2d 1184, 1185 (9th Cir.1988). A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. *Western Reserve Oil & Gas Co. v. New*, 765 F.2d 1428, 1430 (9th Cir.1985), *cert. denied*, 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 773 (1986). We limit our review to the contents of the complaint and construe all allegations of material fact in the light most favorable to Adult Video. *Id.*

not contest the constitutionality of RICO's civil remedies here.

**2.** Adult Video also included in this formula the stiff detention and sentencing provisions contained in the Bail Reform Act of 1984, 18 U.S.C. §§ 3142–43, 3147–48, and the Sentencing Reform Act of 1984, 28 U.S.C. §§ 991–98, as applied to obscenity prosecutions. Adult Video does not rely upon either of these statutes in its argument on appeal.

## II. *Standing and Ripeness*

■ While the parties do not contest Adult Video's standing, we have an independent obligation to verify its authority to adjudicate this case. *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 230–31, 110 S.Ct. 596, 607–08, 107 L.Ed.2d 603 (1990). Because the federal government is not prosecuting Adult Video under RICO, Adult Video must show "a 'reasonable threat of prosecution for conduct allegedly protected by the Constitution.'" *Polykoff v. Collins,* 816 F.2d 1326, 1331 (9th Cir. 1987) (quoting *Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.,* 477 U.S. 619, 625 n. 1, 106 S.Ct. 2718, 2721–22 n. 1, 91 L.Ed.2d 512 (1986)); *see also Ripplinger v. Collins,* 868 F.2d 1043, 1047 (9th Cir. 1989).

Adult Video passes this test. Each of the parties alleges that it either produces, distributes, sells, or consumes erotic videotapes and that its activities either could subject it to RICO prosecution or are chilled by the threat of such prosecution. The government's active enforcement of RICO's obscenity provision against other videotape distributors [3] demonstrates that the threat of prosecution is real. *See Virginia v. American Booksellers Ass'n,* 484 U.S. 383, 392–93, 108 S.Ct. 636, 642–43, 98 L.Ed.2d 782 (1988).

While Adult Video does face a reasonable threat of prosecution, its complaint challenges more than the constitutionality of RICO obscenity prosecutions in and of themselves. Adult Video also objects to the seizures that may occur prior to prosecution and to the penalties that automatically follow a conviction. Consequently, our standing query must proceed one step further and determine whether Adult Video faces a reasonable threat of pre-trial seizure or post-conviction forfeiture. *See Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 303, 99 S.Ct. 2301, 2311, 60 L.Ed.2d 895 (1979).

■ Nothing in the record before us indicates that the Department of Justice has conducted pre-trial seizures in RICO obscenity cases. *See Fort Wayne Books,* 489 U.S. at 67 n. 13, 109 S.Ct. at 929–30 n. 13 (noting that the United States asserted in its 1988 *amicus curiae* brief that it did not engage in such activity). The statute nevertheless authorizes such seizures. In addition, no formal policy of the Department of Justice prohibits its prosecutors or officers from pursuing pre-trial seizures, and enforcement practices may change at any time in any case. Consequently, Adult Video's apprehension concerning pre-trial seizure is reasonable. Therefore, Adult Video does have standing to litigate this claim.

■ Likewise, because RICO mandates forfeiture upon conviction and expressly defines its scope, leaving district courts no discretion to limit it, we hold that the reasonable threat of prosecution confronting Adult Video necessarily entails a reasonable threat of post-trial forfeiture. *See Sequoia Books, Inc. v. Ingemunson,* 901 F.2d 630, 633–34 (7th Cir.) (court entertains pre-enforcement challenge to post-conviction forfeiture provision), *cert. denied,* — U.S. —, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990); *cf. Babbitt,* 442 U.S. at 303, 99 S.Ct. at 2311 (challenge to vagueness of criminal penalty provision). Adult Video thus has standing to challenge the post-trial forfeiture provision as unconstitutional.

With respect to the argument of an unconstitutional chill, Adult Video has alleged an actual injury. It alleges an immediate and tangible chill on distribution, as well as on a consumer's and a retailer's ability to obtain erotic and sexually explicit videotapes. "To the extent the provisions require [Adult Video] and similarly situated businesses to exercise self-censorship, they are required to exercise self-censorship today." *Sequoia Books,* 901 F.2d at 634; *see also Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 64 n. 6, 83 S.Ct. 631, 636 n. 6, 9 L.Ed.2d 584 (1963) (standing exists if governmental action impairs sales by the plaintiffs of arguably protected materials).

---

**3.** *See, e.g., United States v. Pryba,* 900 F.2d 748 (4th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 305, 112 L.Ed.2d 258 (1990).

■ The absence of an active prosecution against Adult Video also raises the question of ripeness. Our conclusion that a reasonable threat of prosecution exists, for purposes of standing, effectively dispenses with any ripeness problem. The threat of a pre-trial (indeed, pre-prosecution) seizure may be reasonably discerned from the statute's text and the government's practices in other RICO cases.

Adult Video's objections to the post-trial remedy of forfeiture are also ripe. Adult Video's fear of forfeiture is reasonable and is alleged currently to have a concrete impact on Adult Video's exercise of its First Amendment rights. *See Babbitt,* 442 U.S. at 303, 99 S.Ct. at 2311.[4]

### III. *Unconstitutional Chill*

Adult Video contends that the combination of RICO's severe penalty provisions, the nebulous definition of obscenity, and the absence of a rigorous scienter requirement for obscenity offenses hangs like a Sword of Damocles over those engaged in sexually explicit speech, unconstitutionally chilling protected communication.

Adult Video's concerns about the fragility of sexually explicit speech and the likely consequences of its entanglement in this regulatory web have great practical appeal. The Supreme Court, however, has already rejected an essentially identical argument in *Fort Wayne Books.* There the Supreme Court found unpersuasive the bookstore operators' contention that the inherent vagueness of *Miller's* obscenity standard and the draconian penalties attaching to a RICO conviction in Indiana transgressed the First Amendment. The Court characterized the vagueness argument as "noth-

ing less than an invitation to overturn *Miller*—an invitation that we reject." 489 U.S. at 57, 109 S.Ct. at 924; *see also Alexander v. Thornburgh,* 943 F.2d 825, 832 (8th Cir.1991).

■ Here, as in *Fort Wayne Books,* the RICO statute simply incorporates the state and federal obscenity laws—laws which Adult Video does not contend violate *Miller's* constitutional limitations on the definition of obscenity. Whatever vagueness or indefiniteness plagues these statutes is, as long as *Miller* remains good law, constitutionally tolerable. Transporting these laws into RICO does not exacerbate the haziness of the obscenity definition. It simply alters the format for prosecuting repeated violations of the obscenity laws. *See Fort Wayne Books,* 489 U.S. at 58, 109 S.Ct. at 925 ("Given that the RICO statute totally encompasses the obscenity law, if the latter is not unconstitutionally vague, the former cannot be vague either."); *Alexander v. Thornburgh,* 713 F.Supp. 1278, 1291 & n. 7 (D.Minn.), *appeal dismissed,* 881 F.2d 1081 (8th Cir.1989).

■ The Supreme Court also dismissed the bookstore operators' objections to Indiana's stiff RICO penalties by declaring any additional deterrent effect on protected speech to be the inevitable consequence of the criminal law's legitimate efforts to deter and to punish obscenity:

It may be true that the stiffer RICO penalties will provide an additional deterrent to those who might otherwise sell obscene materials; perhaps this means—as petitioner suggests—that some cautious booksellers will practice self-censor-

---

**4.** Since *Babbitt,* at least four Justices have expressed the view that "it does not follow that a challenge to whatever *remedy* might ultimately be fashioned (should liability be established and relief ordered) is ripe merely upon a showing of a 'reasonable threat' that proceedings will commence." *Ohio Civil Rights,* 477 U.S. at 633 n. 4, 106 S.Ct. at 2726 n. 4 (Stevens, J., concurring) (original emphasis); *see also Fort Wayne Books,* 489 U.S. at 60, 109 S.Ct. at 926 (challenge to state RICO civil forfeiture not ripe because "[t]hese claims can only be reviewed when (or if) such remedies are enforced against petitioner"). These cases are distinguishable, though,

because the only uncertainty in this case is whether prosecution will result. The federal RICO statute prescribes the penalty that district courts *must* impose. Justice Stevens' concurrence spoke to a situation where the adjudicative body had the authority to tailor its remedies to avoid a constitutional violation. *See Ohio Civil Rights,* 477 U.S. at 633 n. 4, 106 S.Ct. at 2726 n. 4. Likewise, the pursuit of civil forfeiture in addition to criminal penalties under Indiana's RICO statute is optional for prosecutors. *See Fort Wayne Books,* 489 U.S. at 60, 109 S.Ct. at 926.

ship and remove First Amendment protected materials from their shelves. But deterrence of the sale of obscene materials is a legitimate end of state antiobscenity laws, and our cases have long recognized the practical reality that "any form of criminal obscenity statute applicable to a bookseller will induce some tendency to self-censorship and have some inhibitory effect on the dissemination of material not obscene."

*Id.,* 489 U.S. at 60, 109 S.Ct. at 925–26 (quoting *Smith v. California,* 361 U.S. 147, 154–55, 80 S.Ct. 215, 219, 4 L.Ed.2d 205 (1959)) (citation omitted); *see also Sequoia Books,* 901 F.2d at 637 ("The *in terrorem* effects of which Sequoia complains are simply the intended by-product of a legislative decision to punish those who deal in obscene materials and to make that business more costly."); *United States v. Pryba,* 900 F.2d 748, 756 (4th Cir.) (chill caused by RICO penalties does not violate the First Amendment because "[t]he fact that a person does some business disseminating protected materials cannot immunize that person from [penalties] that may be imposed for violation of criminal law") (quotation omitted), *cert. denied,* —— U.S. ——, 111 S.Ct. 305, 112 L.Ed.2d 258 (1990); *Polykoff,* 816 F.2d at 1340 n. 9.

*Fort Wayne Books* is thus dispositive of Adult Video's unconstitutional chill argument.

## IV. *Unconstitutional Overbreadth*

■ Adult Video argues that RICO, as applied to obscenity, is subject to facial invalidation for overbreadth. Specifically, Adult Video contends that the penalty provisions impermissibly stifle constitutionally-protected sexually explicit speech. Enforcement of RICO in the obscenity context, Adult Video continues, can never legitimately occur because any consequent forfeiture would represent an unconstitutional prior restraint.

The overbreadth doctrine constitutes an exception to the general rule requiring the constitutionality of a statute to be tested against the conduct of the party before the court. It permits a party to challenge a

law, not on the ground that the statute is unconstitutional as enforced against it, but rather on the ground that the statute's application to third persons not before the court violates the First Amendment. *Members of the City Council v. Taxpayers for Vincent,* 466 U.S. 789, 798–99 & n. 17, 104 S.Ct. 2118, 2125 & n. 17, 80 L.Ed.2d 772 (1984); *see also New York v. Ferber,* 458 U.S. 747, 768–69, 102 S.Ct. 3348, 3360–61, 73 L.Ed.2d 1113 (1982).

[T]he transcendent value to all society of constitutionally protected expression is deemed to justify allowing attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity. This is deemed necessary because persons whose expression is constitutionally protected may well refrain from exercising their rights for fear of criminal sanctions provided by a statute susceptible of application to protected expression.

*Taxpayers for Vincent,* 466 U.S. at 799 n. 17, 104 S.Ct. at 2125 n. 17 (quotations and citations omitted). In order to prevail, the plaintiff must demonstrate "substantial" overbreadth, " 'judged in relation to the statute's plainly legitimate sweep.' " *Taxpayers for Vincent,* 466 U.S. at 799–800, 104 S.Ct. at 2126 (quoting *Broadrick v. Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908, 2918, 37 L.Ed.2d 830 (1973)).

In light of these precedents, we reject Adult Video's overbreadth challenge. Adult Video's argument is little more than an amalgam of its unconstitutional prior restraint and chill arguments. Adult Video has not demonstrated the type of showing necessary to maintain an overbreadth challenge on First Amendment grounds. Adult Video's overbreadth theory simply mirrors the constitutional arguments it makes concerning the RICO obscenity provisions' effects on its own ability to produce, distribute, sell, and consume sexually explicit videotapes.

In *Taxpayers for Vincent,* the Supreme Court rebuffed an overbreadth argument on precisely this ground:

This is not ... an appropriate case to entertain a facial challenge based on overbreadth. For we have found nothing in the record to indicate that the ordinance will have any different impact on any third parties' interests in free speech than it has on [plaintiffs].

... [Plaintiffs] have, in short, failed to identify any significant difference between their claim that the ordinance is invalid on overbreadth grounds and their claim that it is unconstitutional when applied to [them].... [Plaintiffs] have simply failed to demonstrate a realistic danger that the ordinance will significantly compromise recognized First Amendment protections of individuals not before the Court.

*Id.* at 801–02, 104 S.Ct. at 2127.

## V. *RICO's Pre–Trial Seizure and Post–Trial Forfeiture Provisions*

### A. Pre–Trial Seizures

■ Adult Video contends that RICO's section 1963(d) is facially unconstitutional because it permits the pre-trial seizure of videotapes based only on a finding of probable cause to believe they are obscene.

The Supreme Court's recent opinion in *Fort Wayne Books* leaves little room for argument over the unconstitutionality of pre-trial seizures of allegedly obscene materials. Indeed, the government foregoes any such argument here. The Supreme Court held in *Fort Wayne Books* that pre-trial seizures of allegedly obscene books and films pursuant to Indiana's RICO statute violated the First Amendment. "[P]robable cause to believe that there are valid grounds for seizure," the Court explained, "is insufficient to interrupt the sale of presumptively protected books and films." 489 U.S. at 66, 109 S.Ct. at 929.

This holding translates readily to the federal RICO context. Indeed, the Supreme Court noted that Indiana's RICO statute was "similar" to the federal racketeering law. *Fort Wayne Books*, 489 U.S. at 67 n. 13, 109 S.Ct. at 930 n. 13. Federal RICO also permits pre-trial seizures upon a showing of probable cause. Thus the Supreme Court's concern that films not be removed from circulation prior to "[a] determination that the seized items [are] 'obscene' or that a RICO violation *has occurred*" applies with equal vigor in this instance. *Id.* at 66, 109 S.Ct. at 929 (original emphasis). The First Amendment will not tolerate such seizures until the government's reasons for seizure weather the crucible of an adversary hearing. *Id.* at 67, 109 S.Ct. at 929 ("[W]here the RICO violation claimed is a pattern of racketeering that can be established only by rebutting the presumption that expressive materials are protected by the First Amendment, that presumption is not rebutted until the claimed justification for seizing books or other publications is properly established in an adversary proceeding.") (footnote omitted).[5]

Because the reasoning of *Fort Wayne Books* is equally applicable to the federal RICO statute, we hold that the portion of section 1963(d) that authorizes pre-trial seizures is unconstitutional on its face.[6] We therefore reverse on this issue and direct the district court to enter judgment for Adult Video.

### B. Post–Trial Forfeiture

Adult Video argues that RICO's post-trial forfeiture penalty constitutes an unlawful prior restraint because, by seizing assets beyond those adjudged obscene, it exacts as a toll for past transgressions the defendant's ability to communicate in the future. While we decline to equate these forfeitures with prior restraints, we also conclude that some tailoring of the scope of forfeiture is necessary to harmonize

---

5. The Supreme Court's concerns about premature seizure of expressive material operate even more forcefully in this case. Under Indiana's law, the defendant had already been convicted of the predicate RICO offenses, so the seizures were based upon both a history of obscenity convictions as well as probable cause. *Fort Wayne Books*, 489 U.S. at 66, 109 S.Ct. at 929.

Under the federal RICO statute, the predicate offenses need not be established prior to trial.

6. Because Adult Video does not challenge the other pre-trial procedures authorized by section 1963(d), we need not address their constitutionality.

RICO's post-trial forfeiture penalty with the First Amendment.

### 1. Prior Restraint

Because a RICO forfeiture occurs only after a criminal trial on the obscenity issue, with its full panoply of procedural protections, the forfeiture represents punishment for engaging in obscenity rather than a prior restraint. "There is a historical distinction between prior restraints and criminal penalties in the first amendment setting, which has both practical consequences and a theoretical basis." *Polykoff*, 816 F.2d at 1337.

The primary concern animating the Supreme Court's prior restraint jurisprudence has been to prevent the government from seizing materials or otherwise halting speech prior to a determination that the speech is actually harmful. *See, e.g., Fort Wayne Books*, 489 U.S. at 66–67, 109 S.Ct. at 929–30 (seizure inappropriate because effected prior to a judicial determination of obscenity); *Vance v. Universal Amusement Co.*, 445 U.S. 308, 316–17, 100 S.Ct. 1156, 1161–62, 63 L.Ed.2d 413 (1980) (per curiam) (prior restraint unconstitutional because speech not yet adjudged unlawful); *A Quantity of Copies of Books v. Kansas*, 378 U.S. 205, 210, 84 S.Ct. 1723, 1725–26, 12 L.Ed.2d 809 (1964) (warrant for seizure unconstitutional because not preceded by a hearing on obscenity); *Marcus v. Search Warrant of Property at 104 E. Tenth St.*, 367 U.S. 717, 731, 81 S.Ct. 1708, 1715–16, 6 L.Ed.2d 1127 (1961) (warrants to seize alleged obscenity unconstitutional because of inadequate procedural safeguards); *cf. Kingsley Books, Inc. v. Brown*, 354 U.S. 436, 444–45, 77 S.Ct. 1325, 1329–30, 1 L.Ed.2d 1469 (1957) (seizure after determination of obscenity in a criminal trial does not violate the First Amendment). The Court's constant refrain has been that it is better to punish harmful speech after it occurs than to smother it at birth. *See, e.g., Vance*, 445 U.S. at 316 n. 13, 100 S.Ct. at 1161 n. 13 ("[A] free society prefers to punish the few who abuse rights of speech *after* they break the law than to throttle them and all others beforehand.") (original emphasis); *Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 714–15, 51 S.Ct. 625, 630–31, 75 L.Ed. 1357 (1931).

The prior restraint cases do not stand for the proposition that harmful speech can never be punished. To the contrary, case law expressly permits punishment so long as the process for determining the appropriateness of sanctions "embod[ies] the most rigorous procedural safeguards" and is "ringed about with adequate bulwarks." *Bantam Books*, 372 U.S. at 66, 83 S.Ct. at 637. The protections contained in a criminal RICO prosecution—such as the allocation of the burden of proof, a heightened standard of proof, and adversariness—satisfy *Bantam's* command.

In *Kingsley Books*, the Supreme Court sustained a New York statute permitting the seizure of obscene books and an order enjoining the defendant from further distribution of such books because, unlike the prior restraint cases, a court imposed these penalties only after the books had been adjudged obscene in a criminal trial. 354 U.S. at 445, 77 S.Ct. at 1330 ("Unlike *Near [v. Minnesota]*, [the New York Law] is concerned solely with obscenity and ... studiously withholds restraint upon matters not already published and not yet found to be offensive."); *see also Bantam Books*, 372 U.S. at 70, 83 S.Ct. at 639 ("Criminal sanctions may be applied only after a determination of obscenity has been made in a criminal trial hedged about with the procedural safeguards of the criminal process.").

RICO likewise postpones forfeiture until a judicial determination of obscenity is made after a criminal trial.[7] Only at this point does RICO permit "the seizure ... of the instruments of ascertained wrongdoing." *Kingsley Books*, 354 U.S. at 444, 77 S.Ct. at 1329; *see also Sequoia Books*, 901 F.2d at 636 (post-trial forfeiture under Illi-

---

7. As noted earlier, we have no occasion to address the facial constitutionality of RICO's civil forfeiture provision, 18 U.S.C. 1964, in this case.

nois obscenity statute does not violate the First Amendment because "Illinois does not attempt here to regulate the sale of protected reading materials or to close bookstores. It merely punishes past obscenity convictions."); *Western Business Sys., Inc. v. Slaton*, 492 F.Supp. 513, 514 (N.D.Ga.1980) (post-trial forfeiture under Georgia's RICO statute does not entrench upon free speech rights).

■ The purpose of the forfeiture is to strip the defendant of the tools and profits of criminal conduct and thereby to terminate the illegal enterprise. Thus, unlike prior restraints, it is the defendant's unlawful commercial conduct (dealing in obscenity) rather than the defendant's anticipated speech that sets into motion a RICO forfeiture. In *Arcara*, 478 U.S. at 705–07, 106 S.Ct. at 3177–78, the Supreme Court upheld an order of closure of an adult bookstore. It refused to equate the closure with a prior restraint in part because, as with RICO, non-expressive conduct (prostitution on the premises), rather than speech, prompted the closure. *Id.* at 705 n. 2, 106 S.Ct. at 3177 n. 2; *see also Pryba*, 900 F.2d at 755.

■ Also like the orders sustained in *Arcara* and *Kingsley Books*, RICO forfeiture does not silence the defendant. Forfeiture simply precludes the defendant from using assets derived from the obscenity trade to subsidize future speech. *See Arcara*, 478 U.S. at 706 n. 2, 106 S.Ct. at 3177 n. 2 (order "impose[s] no restraint at all on the dissemination of particular materials, since respondents are free to carry on their bookselling business at another location"); *511 Detroit St., Inc. v. Kelley*, 807 F.2d 1293, 1299 (6th Cir.1986) (heavy fines imposed under Michigan's anti-obscenity law do not constitute prior restraints because "there is no prospective legal restraint on any expression, obscene or protected, that [defendants] ... may choose to undertake"), *cert. denied*, 482 U.S. 928, 107 S.Ct. 3211, 96 L.Ed.2d 698 (1987). A forfeiture is not a gag order. RICO defendants do not risk contempt if they revive that portion of their business dealing in sexually explicit and erotic videotapes after convic-

tion. Defendants simply have no First Amendment right to use the profits and proceeds from trafficking in obscenity to finance their constitutionally protected speech. We agree with the Fourth Circuit that "defendants may not launder their money derived from racketeering activities by investing it in bookstores, videos, magazines and other publications. The First Amendment may be used as a shield, but it is not a shield against criminal activity." *Pryba*, 900 F.2d at 755.

### 2. Scope of Forfeiture

■ Although we will not characterize RICO forfeiture as a prior restraint, we do consider it necessary to tailor the scope of the forfeiture permitted by statute to alleviate constitutional concerns about curtailing legitimate speech in the name of fighting obscenity. While the authorization of a forfeiture does not by itself render the RICO statute unconstitutional, to the extent section 1963 mandates forfeiture of more property than the Constitution will tolerate as punishment for an obscenity offense, the statute is unconstitutional on its face.

As noted earlier, the scope of RICO forfeiture is extremely broad, reaching nearly every asset remotely connected with the offense. "[F]orfeiture is not limited to those assets of a RICO enterprise that are tainted by use in connection with racketeering activity, but rather extends to the convicted person's entire interest in the enterprise." *United States v. Busher*, 817 F.2d 1409, 1413 (9th Cir.1987). We have already observed that "RICO's breadth and inflexibility counsel[ ] caution, for no penalty is per se constitutional." *Id.* at 1414 (quotation omitted); *cf. Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Bd.*, —— U.S. ——, 112 S.Ct. 501, 511–12, 116 L.Ed.2d 476 (1991) (statute designed to deprive convicted criminals of profits and proceeds from publicizing their crimes not sufficiently tailored to survive First Amendment scrutiny).

For purposes of comparison, a number of other obscenity statutes contain markedly less drastic forfeiture provisions than fed-

eral RICO does. Illinois's obscenity statute permits forfeiture only of the direct and indirect proceeds of obscenity violations and the assets used wholly or in part to subsidize the actual criminal conduct. *See Sequoia Books*, 901 F.2d at 632; *see also id.* at 637–38 (comparing the scope of forfeiture permitted by Illinois law and by federal RICO). The federal Child Protection and Obscenity Enforcement Act likewise limits forfeitures to (i) the obscene materials themselves, (ii) property constituting or traceable to the gross profits or proceeds obtained from the offense, and (iii) property actually used or intended to be used to commit or to promote the offense. 18 U.S.C. §§ 1466(a), 2253(a); *cf. Fort Wayne Books*, 489 U.S. at 65, 109 S.Ct. at 928 ("[W]e assume without deciding that bookstores and their contents are forfeitable ... when it is proved that these items are property *actually used in, or derived from,* a pattern of violations of ... obscenity laws.") (emphasis added).[8]

The Supreme Court, in the past, has recognized the need to tailor criminal rules narrowly and carefully when they seek to operate within the First Amendment arena. "Our decisions furnish examples of legal devices and doctrines in most applications consistent with the Constitution, which cannot be applied in settings where they have the collateral effect of inhibiting the freedom of expression, by making the individual the more reluctant to exercise it." *Smith*, 361 U.S. at 150–51, 80 S.Ct. at 217 (citing examples); *see also Simon & Schuster*, 112 S.Ct. at 512 (New York's "Son of Sam" law held to be "inconsistent with the First Amendment" because not narrowly tailored to achieve goal of compensating victims from the fruits of the crime); *Quantity of Books*, 378 U.S. at 211–12, 84 S.Ct. at 1726–27 (state may not treat ordinary contraband and obscene

books the same for purposes of seizure because of the First Amendment concerns infusing the latter); *accord Speiser v. Randall*, 357 U.S. 513, 525, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460 (1958) ("The separation of legitimate from illegitimate speech calls for ... sensitive tools....")

In light of these precedents, the current breadth of RICO's forfeiture provision cannot pass constitutional muster. At the very least, those assets or interests of the defendant invested in legitimate expressive activity being conducted by parts of the enterprise uninvolved or only marginally involved in the racketeering activity may not be forfeited. As in *Busher*, district courts should not, absent exceptional circumstances, "order forfeiture of a defendant's entire interest in an enterprise that is essentially legitimate where he has committed relatively minor RICO [obscenity] violations not central to the conduct of the business and resulting in relatively little illegal gain in proportion to its size and legitimate income." 817 F.2d at 1415–16. Because Adult Video raises only a facial attack, we leave for the district courts the specific formulation of RICO forfeiture orders that are consistent with the First Amendment, in light of the particular facts presented in individual cases. *Cf. id.*

The government no doubt believes that diminishing the scope of RICO forfeiture in this manner will dilute the statute's deterrent effect and risk a resurrection of the criminal enterprise. While these are important concerns, the incremental contribution that RICO's current sweeping forfeiture provisions make to the deterrence and destruction of criminal enterprises over what would be accomplished under a narrower definition of forfeitable assets does not justify the additional curtailment of constitutionally protected, sexually explicit speech. *See Simon & Schuster*, 112 S.Ct. at 509

---

**8.** Indiana's RICO statute requires forfeiture only of property "used in the course of, intended for use in the course of, derived from, or realized

through" the racketeering activity. *Fort Wayne Books*, 489 U.S. at 51, 109 S.Ct. at 921.

("[W]e have long recognized that even regulations aimed at proper governmental concerns can restrict unduly the exercise of rights protected by the First Amendment.") (quoting *Minneapolis Star & Tribune Co. v. Minnesota Comm'r of Revenue*, 460 U.S. 575, 592, 103 S.Ct. 1365, 1376, 75 L.Ed.2d 295 (1983)). Tailoring the scope of forfeiture acknowledges that in obscenity cases, unlike traditional RICO prosecutions, a countervailing concern for protecting the public's right to receive, as well as the defendant's right to engage in, non-obscene speech demands a more delicate approach to forfeitures. *See Marcus*, 367 U.S. at 736, 81 S.Ct. at 1719 (expressing concern for the "public's opportunity to obtain ... publications" because the state's obscenity seizure law deterred the sale and distribution of speech falling under the First Amendment's aegis). The forfeiture of assets derived from drugs, arson, fraud, and murder rarely, if ever, implicates a public right of access to information. The forfeiture of assets loosely affiliated with obscenity offenses, by contrast, hurts not just the defendant, but also those members of the public who wish to obtain sexually explicit and erotic videotapes. Government "is not free to adopt whatever procedures it pleases for dealing with obscenity ... without regard to the possible consequences for constitutionally protected speech." *Id.* at 731, 81 S.Ct. at 1716; *see also Smith*, 361 U.S. at 154, 80 S.Ct. 215, 219 (strict liability provision in obscenity statute unconstitutional because it would "restrict the public's access to forms of the printed word which the State could not constitutionally suppress directly").

In sum, we hold that RICO's provisions permitting the pre-trial preservation of assets for forfeiture are not facially unconstitutional in obscenity cases. Only that part of section 1963(d) that authorizes pre-trial seizures of obscene materials on the basis of probable cause is unconstitutional. Post-trial forfeitures do not, on their face, amount to prior restraints. We find it necessary, however, to tailor the scope of RICO forfeitures in obscenity cases in order to conform the statute to the dictates of the First Amendment. So delineated, RICO's post-trial forfeiture provisions are not facially unconstitutional.

## CONCLUSION

James Madison observed that " '[s]ome degree of abuse is inseparable from the proper use of everything.' " *Near*, 283 U.S. at 718, 51 S.Ct. at 632 (quoting *Report on the Virginia Resolutions, Madison's Works*, vol. iv, 544). Speech, perhaps more than any other constitutionally protected activity, offers a daily demonstration of the truth of Madison's words. The First Amendment, however, strictly regulates government's authority to punish expression in the name of curbing abuse. Our Constitution prefers to err on the side of protecting speech. "[I]t is better to leave a few of [speech's] noxious branches to their luxuriant growth, than, by pruning them away, to injure the vigour of those yielding the proper fruits." *Id.* (quoting *Report on the Virginia Resolutions, Madison's Works*, vol. iv, 544). RICO's scattershot method of criminal prosecution is ill-suited to the delicate task of policing sexually explicit expression.

Although we hold that forfeiture provisions in general do not amount to unconstitutional prior restraints, the breadth of RICO's current forfeiture provision is incompatible with the First Amendment. Only those assets traceable to or substantially intertwined with the obscenity racketeering enterprise may be forfeited. Similarly, while we uphold section 1963(d)'s provision for the pre-trial preservation of assets, we invalidate that portion of the section that permits pre-trial seizures of obscenity merely on a showing of probable cause.

Adult Video has not made out a claim of overbreadth because it has not demonstrated that RICO impacts third parties' speech any differently than it does its own.

Finally, we reject Adult Video's unconstitutional chill argument, in light of the Supreme Court's disposition of a similar claim in *Fort Wayne Books*.

The decision of the district court is AFFIRMED IN PART and REVERSED IN

PART. Each party to this appeal shall bear its own costs.